THE GOVERNMENT OF
RWANDA, Plaintiff,

v.

RWANDA WORKING GROUP
et al., Defendants.

No. Civ.A. 971550(RMU).

United States District Court,
District of Columbia.

March 19, 2001.

David J. Farber, Paul A.J. Wilson, Ruth L. Ramsey, Patton Boggs, L.L.P., Washington, DC, for Plaintiff.

Joseph Peter Drennan, Alexandria, VA, for Defendant Johnson.

Aloys Uwimana, Silver Spring, MD, for Defendant Uwimana.

Timothy L. Towell, Washington, DC, Edward J. Van Kloberg, Washington, DC, for Defendant Rwanda Working Group.

### *MEMORANDUM OPINION*

URBINA, District Judge.

DENYING DEFENDANT JOHNSON'S MOTION TO DISMISS; DENYING THE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### I. INTRODUCTION

This matter comes before the court on defendant Robert W. Johnson II's motion to dismiss for lack of subject-matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and 12(h), and the plaintiff's motion for partial summary judgment. The current Government of Rwanda ("the plaintiff") brings this action against the Rwanda Working Group ("RWG"), an association allegedly hired to perform lobbying services by the government that ruled Rwanda from April to July 1994 ("the predecessor government"), Robert W. Johnson II ("defendant Johnson" or "Mr. Johnson"), an attorney for the predecessor government and an alleged member of the RWG, and Aloys Uwimana ("defendant Uwimana" or "Ambassador Uwimana"), the predecessor government's ambassador to the United States (collectively, "the defendants").

The plaintiff asserts two claims against defendant Johnson and the RWG, one for "conversion, accounting and constructive trust," and the other for breach of fiduciary duty and constructive trust. *See* Compl. ¶¶ 56–65. Both claims seek the return of $83,000 (the sum of $28,000 paid by the predecessor government to Johnson and/or the RWG under one contract and $55,000 paid to Johnson and/or the RWG under a second contract) plus punitive damages.[1] The plaintiff maintains that this court has diversity jurisdiction because the plaintiff is a foreign state, the defendants are citizens of different states, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(4).

Defendant Johnson moves to dismiss the complaint as to himself on the ground that the plaintiff's claims fail to satisfy the $75,000 jurisdictional requirement of Title 28 U.S.C. § 1332(a).[2] The plaintiff, in

---

1. The plaintiff has not moved for summary judgment on the punitive damages portion of the claim.

2. To date, defendant Uwimana has entered bankruptcy and this action has been automatically stayed against him pursuant to the bankruptcy code, 11 U.S.C. § 362. The plain-

turn, moves for partial summary judgment against defendant Johnson and defendant Uwimana. For the reasons that follow, the court will deny defendant Johnson's motion to dismiss and will deny the plaintiff's motion for partial summary judgment.

## II. BACKGROUND

In 1994, massive upheaval engulfed the country of Rwanda. On April 6, 1994, when Rwandan president Juvenal Habyarimana died in a plane crash after 21 years in power, simmering political unrest erupted into civil war. *See* Def.'s Opp'n to Pl.'s Mot. for Partial Summ.J., Ex. 6 (citing 1995 DEP'T ST. COUNTRY REPORTS ON HUMAN RIGHTS PRACTICES FOR 1994, Rwanda Section). Ethnic tension between the Hutu (85 percent of the population) and the Tutsi (14 percent of the population) escalated when Hutu extremists massacred hundreds of thousands of people, most of whom were Tutsi. *See id.* The Rwandan Patriotic Front, the current government, which is comprised largely of Tutsi's, halted the killings with a military offensive that overtook the self-proclaimed Hutu leadership in July 1994. *See id.* The ascension of the Rwandan Patriotic Front led to a massive flight of Hutu civilians out of Rwanda for fear of Tutsi reprisal. *See id.*

In early to mid–1994, Defendant Aloys Uwimana was the Rwandan ambassador to the United States for the predecessor government of Rwanda. *See* Compl. ¶ 7. The predecessor government ruled Rwanda from April 8, 1994 until July 4, 1994. *See* Pl.'s Mot. for Partial Summ.J. at 2.; Compl. ¶ 8. On July 4, 1994, the plaintiff— the current Government of Rwanda—replaced the predecessor government. *See*

Compl. ¶ 8. The plaintiff was officially sworn in on July 19, 1994. *See id.*

Ambassador Uwimana retained defendants Robert W. Johnson II and the RWG to perform lobbying services for the predecessor government to improve the Rwandan government's image in the United States. *See* Compl. ¶ 17. A Memorandum of Understanding executed on July 8, 1994 ("July 8th Memorandum") between the RWG and Ambassador Uwimana on behalf of the predecessor government provided the details of the lobbying agreement. *See id.* Ambassador Uwimana paid defendants Johnson and/or RWG an initial payment of $28,000 for the lobbying services on July 13, 1994. *See* Compl. ¶¶ 18, 20.

After the current government of Rwanda replaced the predecessor government on July 4, 1994, the U.S. Department of State ordered the Rwandan Embassy closed on July 15, 1994. *See* Compl. ¶ 21. The Department of State also ordered Ambassador Uwimana to relinquish his credentials no later than July 22, 1994 and to leave the United States. *See id.*

On July 21, 1994, Mr. Johnson wrote a progress letter to Ambassador Uwimana regarding the contracted lobbying activities. *See* Compl. ¶ 22. Mr. Johnson also detailed "On-going/New Projects." *See* Compl.Ex. H at 2. The projects discussed included work being done to help the Ambassador and other embassy officials with asylum requests to remain in the United States since "the conditions in Rwanda are potentially life-threatening." *See id.* In the July 21st letter, Mr. Johnson referred to "the transition" of the Rwandan government and stated that "the Embassy needs to provide a check payable to my trust account in the amount of $55,000 tomor-

---

tiff settled with one member of the RWG and has an agreement in principle with another.

*See* Pl.'s Mot. for Partial Summ.J. at 5.

row" to continue work on "these projects." *See id.;* Compl. ¶ 23.

On July 22, 1994, Ambassador Uwimana wrote a second check for $55,000 from the Rwandan Government to Mr. Johnson and/or RWG. *See* Compl. ¶ 25. The plaintiff claims that Ambassador Uwimana wrote the check after his diplomatic mission expired, and thus, that he had no authority to spend Rwanda's funds. *See id.*

According to the plaintiff, it asked defendants Johnson and Uwimana several times to return the money. *See* Compl. ¶ 29. The defendants refused. *See id.* The plaintiff wrote a final letter to the defendants on November 16, 1994, again requesting the return of the $55,000 check. *See* Compl. ¶ 33. Again, the defendants refused to return the money. *See* Compl. ¶ 34.

Defendant Johnson states that he was never a member of the Rwanda Working Group. *See* Def. Johnson's Concise Statement of Issues ¶ 1. He explains that while he handled the initial payment of $28,000 by the predecessor government, he did so only "in his official capacity as attorney [for RWG]." *See id.* Ex. 7, ¶ 17. Defendant Johnson maintains that because he was counsel to the RWG, he cannot be liable for the $28,000. *See* Def.'s Mot. to Dismiss ¶ 18.

Defendant Johnson also contends that the memorandum released by the United States government announcing the official closing of the Rwandan Embassy did not specifically strip Ambassador Uwimana of his official authority before July 22, 1994. *See* Def.'s Opp'n to Pl.'s Mot. for Partial Summ.J. at 15. The memorandum reads, in pertinent part, "[a]ll remaining members of the mission and their family members [ ], ... including Mrs. Uwimana and children, must depart the United States no later than August 14, 1994. Thereafter,

the United States no longer will regard such persons as being entitled to the privileges, immunities, and protections which they now enjoy by virtue of their official status." *See id.* at 15. Defendant Johnson states that since the Ambassador remained an official on July 22, 1994, the $55,000 payment for legal services provided to embassy officials, including defendant Uwimana, was appropriate. *See id.* ¶ 37. Defendant Johnson also notes that even if the plaintiff questions the $55,000, the claim does not satisfy the $75,000 diversity jurisdictional requirement of Title 28 U.S.C. 1332(a). *See* Def.'s Mot. to Dismiss ¶ 18.

The plaintiff filed suit in this court on July 7, 1997. As noted above, only defendant Johnson has filed a motion to dismiss.

### III. DISCUSSION

#### A. Legal Standard

#### 1. Motion to Dismiss for Lack of Subject–Matter Jurisdiction

Before a court may decide the merits of a case, the court must have jurisdiction to hear it. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991) (citing *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). The standard of review for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction depends on the purpose of the motion. *See Freiburger v. Emery Air Charter, Inc.,* 795 F.Supp. 253, 256 (N.D.Ill.1992). If the motion challenges the sufficiency of the allegations of subject-matter jurisdiction, as is the case here, the district court must accept all the complaint's well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor. *See United Trans. Union v. Gateway*

*Western R.R. Co.*, 78 F.3d 1208, 1210 (7th Cir.1996) (citing *Rueth v. EPA*, 13 F.3d 227, 229 (7th Cir.1993)). The plaintiff bears the burden of persuasion to establish subject-matter jurisdiction by a preponderance of the evidence. *See Darden v. United States*, 18 Cl.Ct. 855, 859 (Cl.Ct.1989); *Kehr*, 926 F.2d at 1409; *Boudreau v. United States*, 53 F.3d 81, 82 (5th Cir.1995).

█ In testing whether a claim satisfies the minimum dollar amount for diversity jurisdiction, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938). That is, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.; see also Allen v. Rehman*, 2000 WL 33201275, *1 (D.D.C.2000) (Urbina, J.).

█ The amount in controversy includes both actual and punitive damages. *See Kahal v. J.W. Wilson & Assocs., Inc.*, 673 F.2d 547, 548 (D.C.Cir.1982). The district court must scrutinize the punitive damages claim, however, to ensure that it has at least a "colorable basis in law and fact." *See Kahal*, 673 F.2d at 549.

### 2. Summary Judgment

█ Summary judgment is appropriate if the court finds that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The substantive law on which a claim rests determines which facts are "material." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a fact bears on an essential element of the legal claim, then it is material; otherwise, it is not. *See id.; Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d

265 (1986). Only disputes over facts that can establish an element of the claim, and thus those that might affect its ultimate resolution, can create a "genuine issue" sufficient to preclude summary judgment. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

To prevail on a motion for summary judgment, the moving party must establish that there are no genuine issues of material fact and that the non-moving party has failed to offer sufficient evidence to support a valid legal claim. *See Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. In ruling on the motion, the court must accept the evidence of the non-moving party as true and must draw all justifiable inferences in favor of the non-moving party. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. It is not sufficient, however, for the non-moving party to establish "the mere existence of a scintilla of evidence in support of the [non-moving party's] position ...; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252, 106 S.Ct. 2505.

### B. Defendant Johnson's Motion to Dismiss

Defendant Johnson moves to dismiss on the ground that the plaintiff's claims for the return of $83,000—the sum of $28,000 paid under one contract and $55,000 paid under a second contract—plus additional punitive damages fail to satisfy the $75,000 jurisdictional requirement of Title 28 U.S.C. § 1332(a). The plaintiff counters that this court has diversity jurisdiction under 28 U.S.C. § 1332(a)(4) because the amount in controversy exceeds $75,000 and the dispute is between a foreign state and citizens of different states. Title 28 U.S.C. § 1332(a)(4) states, in relevant part, "the district courts shall have original jurisdic-

tion of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... a foreign state as plaintiff and citizens of a State or of different States." 28 U.S.C. § 1332(a)(4).

■ Defendant Johnson argues that because he was counsel for the RWG and not a RWG member, he cannot be held liable for the $28,000. Because defendant Johnson states that on July 21, 1994, he received a $55,000 payment from defendant Uwimana to provide legal services independent of the RWG, he contends that the amount in controversy is only $55,000. Thus, he argues that the plaintiff has failed to satisfy the jurisdictional requirement of 28 U.S.C. § 1332(a).

In light of the factual discrepancies in the record, the court disagrees. The record shows that the plaintiff could reasonably believe that defendant Johnson acted not as counsel to the RWG, but as a member. Defendant Johnson handled both contracts central to the present issue. *See* Compl. ¶¶ 17, 22. The first contract, dated July 8, 1994, detailed the lobbying agreement between the RWG and the predecessor government. *See* Compl. ¶ 17, Ex. G. The second contract, dated July 21, 1994, discussed the efforts already made by the RWG on behalf of the predecessor government. *See* Compl. ¶ 22. The July 21st letter also discussed asylum plans for the Ambassador and two other embassy officials and their families in light of "potentially life-threatening" conditions in Rwanda. *See* Compl. ¶ 24, Ex. H at 2. The record shows that defendant Johnson managed both communications and accepted payments for both contracts. *See* Compl. ¶¶ 20, 25. Additionally, both checks were made out to "The Robert W. Johnson II Trust Fund." *See id.* Accordingly, a key question remains, namely, whether defendant Johnson was acting as a member of

the RWG or as counsel to the RWG during the making of the contracts.

At this point, the court cannot determine precisely what role defendant Johnson played during either contract. Thus, taking the plaintiff's well-pleaded allegations as true for the purposes of this motion, the court concludes that the plaintiff has properly alleged that it could recover the $83,000 from defendant Johnson. Accordingly, the court denies defendant Johnson's motion to dismiss.

### C. The Plaintiff's Motion for Summary Judgment

For its part, the plaintiff moves for summary judgment on the ground that no genuine issue of material fact exists regarding defendant Johnson's activities in accepting $83,000 from the predecessor government. The plaintiff states that when considering evidence in the record, no disputed facts exist regarding defendant Johnson's actions with respect to the two contracts. *See* Pl.'s Mot. for Partial Summ.J. at 25. Summary judgment, however, is appropriate only when no genuine issue of material fact remains. *See* FED. R.CIV.P. 56(c). Because facts that "bear on an essential element of the legal claim" are material, and disputes over these facts might affect the case's ultimate resolution, those " 'genuine issues' sufficient[ly] preclude summary judgment." *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. In this case, the court holds that genuine issues of material fact remain so as to preclude granting summary judgment.

■ The plaintiff argues that defendant Johnson's activities surrounding the two separate contracts establish his connection and liability for the $83,000. *See* Pl.'s Mot. for Partial Summ.J. at 2. The plaintiff further asserts that no genuine issues of fact exist because both contracts clearly

detail services that were never performed, and defendant Johnson accepted and endorsed both payments by the predecessor government. *See id.* at 5, 10. Moreover, the plaintiff contends that defendant Johnson did not provide any of the services agreed to in the July 8th Memorandum, and accepted funds from Ambassador Uwimana (on behalf of the predecessor government) even though defendant Johnson knew that the predecessor government had fallen. *See id.* The plaintiff also proffers depositions of the other RWG members and defendant Uwimana to support its motion. *See* Compl., Ex. 1 at 4–5.

The court concludes that summary judgment is not appropriate in this case because material factual discrepancies exist. *See* Def. Johnson's Opp'n to Pl.'s Mot. for Summ.J., Exs. 1, 2, 3, 4; Pl.'s Mot. for Summ.J., Exs. 1, 4, 5, 7. The defendants' depositions paint different pictures of the creation role, and management of the RWG. *See* Def. Johnson's Opp'n to Pl.'s Mot. for Partial Summ.J., Exs. 1, 2, 3, 4; Pl.'s Mot. for Partial Summ.J., Exs. 1, 4, 5, 7. The facts in dispute—particularly the nature of the arrangement between defendant Uwimana, defendant Johnson, and the RWG—will affect an element of the claim that will help determine the ultimate resolution of this matter. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Accordingly, the court will deny the plaintiff's motion for partial summary judgment.

### IV. CONCLUSION

For all these reasons, the court denies defendant Johnson's motion to dismiss and denies the plaintiff's motion for summary judgment. An Order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously issued this 19 day of March, 2001.

### *ORDER*

DENYING DEFENDANT JOHNSON'S MOTION TO DISMISS; DENYING THE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously executed and issued this 19th day of March, 2001, it is hereby

**ORDERED** that defendant Johnson's motion to dismiss is **DENIED;** and it is

**FURTHER ORDERED** that the plaintiff's motion for partial summary judgment is **DENIED;** and it is

**ORDERED** that a status hearing is hereby set for May 9, 2001 at 9:30 a.m.

**SO ORDERED.**